UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| DEBORAH D. CRUMP, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|     v. | )    CAUSE NO. 1:20-cv-00370-SLC |
| | ) |
| COMMISSIONER OF SOCIAL SECURITY, *sued as Kilolo Kijakazi, Acting Commissioner of Social Security,*[1] | ) |
| | ) |
|     Defendant. | ) |

## OPINION AND ORDER

Plaintiff Deborah D. Crump appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying her application under the Social Security Act (the "Act") for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (ECF 1). For the following reasons, the Commissioner's decision will be AFFIRMED.

## I. FACTUAL AND PROCEDURAL HISTORY

Crump applied for DIB and SSI in September 2017, alleging disability as of April 27, 2017, which she later amended to May 3, 2017.[2] (ECF 15 Administrative Record ("AR") 256-63, 273). Crump was last insured for DIB on December 31, 2017. (AR 18, 275). Thus, for purposes of her DIB claim, she must establish that she was disabled as of that date. *See Stevenson v. Chater*, 105 F.3d 1151, 1154 (7th Cir. 1997) (explaining that a claimant must

---

[1] Kilolo Kijakazi is now the Acting Commissioner of Social Security, *see, e.g., Butler v. Kijakazi*, 4 F.4th 498 (7th Cir. 2021), and thus, she is automatically substituted for Andrew Saul in this case, *see* Fed. R. Civ. P. 25(d).

[2] Regardless of a claimant's alleged onset date, SSI is not payable until the month following the month in which a claimant files her SSI application. *See* 20 C.F.R. § 416.335. Therefore, the first month Crump could be eligible to receive SSI is October 2017, given that she applied for SSI in September 2017.

establish that she was disabled as of her date last insured in order to recover DIB).

Crump's claim was denied initially and upon reconsideration. (AR 91-159, 164-81, 186-99). On October 17, 2019, administrative law judge ("ALJ") William Pierson conducted an administrative hearing at which Crump, who was represented by counsel, and a vocational expert testified. (AR 44-90). On November 8, 2019, the ALJ rendered an unfavorable decision to Crump, concluding that she was not disabled because despite the limitations caused by her impairments she could perform her past relevant work as a medical coder, as well as a significant number of jobs in the national economy. (AR 15-37). The Appeals Council denied Crump's request for review (AR 1-6), at which point the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481.

Crump filed a complaint with this Court on October 22, 2020, seeking relief from the Commissioner's decision. (ECF 1). In her appeal, Crump contends that: (1) the ALJ failed to properly evaluate all of her disabling medical conditions at steps two and three, and (2) the ALJ erroneously determined that she could perform her past relevant work as a medical coder at step four, as well as other work in the national economy at step five. (ECF 21 at 4-5).

At the time of the ALJ's decision, Crump was fifty-two years old (AR 256); had a high school education (AR 280); and had past work experience as an assembler in manufacturing, a cashier, a cook, and a packer in shipping (AR 281).[3] In her application, Crump alleged disability

---

[3] The job of medical coder is not included in the list of Crump's past relevant work in this record. (AR 281). However, at the hearing the ALJ stated that "the prior [ALJ] decision had findings . . . for past relevant work . . . noted to include . . . meter reader . . . [and medical] coder," and that he could "pull up old testimony and just . . . go over that and make that part of the record." (AR 48). The ALJ then announced that he "made [the past relevant work of medical coder] part of this record by talking about it" and that Crump's attorney "is certainly okay with that." (AR 50). The ALJ's short-cut to include medical coder in this record's list of Crump's past relevant work is the subject of Crump's step-four argument.

due to thoracolumbar degenerative disc disease, lumbar radiculopathy, advanced cervical degenerative disc disease, bilateral failed carpal tunnel surgery, generalized anxiety, major depressive disorder, post traumatic stress disorder and panic disorder, and bilateral failed shoulder repairs. (AR 279).

## II. STANDARD OF REVIEW

Section 405(g) of the Act grants this Court the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . , with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted). The decision will be reversed "only if [it is] not supported by substantial evidence or if the ALJ applied an erroneous legal standard." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000) (citation omitted).

To determine if substantial evidence exists, the Court "review[s] the entire administrative record, but do[es] not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Id.* (citations omitted). "Rather, if the findings of the Commissioner . . . are supported by substantial evidence, they are conclusive." *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003) (citation omitted). "In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether [the claimant] is disabled, we must affirm the ALJ's decision denying benefits." *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996).

3

## III.  ANALYSIS

*A.  The Law*

Under the Act, a claimant seeking DIB or SSI must establish that she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A); *see also* 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring consideration of the following issues, in sequence:  (1) whether the claimant is currently unemployed in substantial gainful activity, (2) whether she has a severe impairment, (3) whether her impairment is one that the Commissioner considers conclusively disabling, (4) whether she is incapable of performing her past relevant work, and (5) whether she is incapable of performing any work in the national economy.[4]  *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001); *see also* 20 C.F.R. §§ 404.1520, 416.920.  An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled.  *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).  A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled.  *Id.*  The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner.

---

[4] Before performing steps four and five, the ALJ must determine the claimant's residual functional capacity ("RFC") or what tasks she can do despite her limitations.  20 C.F.R §§ 404.1520(e), 404.1545(a), 416.920(e), 416.945(a).  The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of.  20 C.F.R. §§ 404.1520(e), 416.920(e).

4

*Clifford*, 227 F.3d at 868.

### B. The Commissioner's Final Decision

On November 8, 2019, the ALJ issued a decision that ultimately became the Commissioner's final decision. (AR 15-37). At step one, the ALJ concluded that Crump had not engaged in substantial gainful activity after her amended alleged onset day of May 3, 2017. (AR 18). At step two, the ALJ found that Crump had the following severe impairments: chronic headaches, degenerative disc disease of the lumbar spine, chronic pain syndrome, thoracic stenosis, lumbar spondylosis, lumbar spinal stenosis without neurogenic claudication, and carpal tunnel syndrome. (*Id.*). At step three, the ALJ concluded that Crump did not have an impairment or combination of impairments severe enough to meet or equal a listing. (AR 22).

Before proceeding to step four, the ALJ determined that the record did not document sufficient objective medical evidence to substantiate the severity of the pain and degree of functional limitations that Crump alleged. (AR 23). The ALJ assigned Crump the following RFC:

> [T]he claimant has the [RFC] to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that lifting, carrying[,] pushing and pulling 10 pounds frequently and 20 pounds occasionally. The claimant can sit at least six hours in an eight-hour workday and stand and/or walk 6 hours in an eight-hour workday. The cla[i]ment should not climb ladders, ropes, or scaffolds. The claimant can occasionally kneel, crouch, and crawl. The claimant can occasionally bend and stoop in addition to what is required to sit. The claimant can occasionally use ramps and stairs. Aside from the use of ramps and stairs on an occasional basis, the claimant should no[t] work upon uneven surfaces. The claimant can perform frequent, but not constant, fingering, feeling, gripping, fine manipulation of small objects such as a pen, computer mouse or paper clip. The claimant is limited to frequent, not constant gross manipulation and handling, grasping, turning, gripping of larger objects. The claimant is limited to occasional overhead reaching and occasional overhead work. The claimant should avoid work involving concentrated exposure to vibration such as using heavy sanders. The claimant should avoid work requiring reaching behind the

5

> back. The claimant is limited from concentrated exposure to excessive fumes and gases and excessive heat, humidity and cold such as when working outside or within a sawmill, boiler room, chemical plant, greenhouse, refrigerator or sewage plant. The claimant should avoid work within close proximity to very loud noises (level 5) such as a fire alarm or very bright flashing lights such as a strobe more than occasionally. The claimant should not perform work requiring the operation of motor vehicles, forklifts or heavy machinery.

(AR 22-23).

The ALJ found at step four that given the foregoing RFC, Crump could perform her past relevant work as a medical coder. (AR 35). At step five, the ALJ further concluded that Crump could perform a significant number of other jobs in the national economy, including office helper, mail clerk, counter clerk, and furniture rental clerk. (AR 36). Alternatively, the ALJ also found that Crump could perform the representative jobs of laundry sorter, mail clerk, and office helper, even if she were further limited to:

> [T]asks involving simple instructions, defined as tasks and instructions that can be learned through short demonstration, or when beyond short demonstration, up to and including one month, consistent with work at the SVP1 and SVP 2 level and the claimant is limited to superficial interaction with coworkers, supervisors and the public, with superficial interaction defined as occasional and casual contact not involving prolonged conversation and contact with supervisors still involves necessary instruction and prolonged conversation is not necessary for task completion and the claimant is limited to work within a low stress job defined as requiring only occasional decision making and only occasional changes in the work setting and the claimant can tolerate predictable changes in the work environment and the claimant can meet production requirements in an environment that allows her to sustain a flexible and goal oriented pace and the claimant is limited from fast paced work with rigid or strict productivity requirements . . . .

(AR 36). Consequently, Crump's applications for DIB and SSI were denied. (AR 36-37).

### C. The ALJ's Step-Two Determination

Crump first argues that the ALJ failed to properly evaluate all of her medical conditions at step two, necessitating a remand of the Commissioner's final decision. (ECF 21 at 6-13). For

6

the following reasons, Crump's first argument is unpersuasive.

Step two of the five-step sequential process requires the ALJ to determine whether the claimant has a severe impairment. "The Step 2 determination is a *de minimis* screening for groundless claims . . . ." *O'Connor-Spinner v. Colvin*, 832 F.3d 690, 697 (7th Cir. 2016) (citation and internal quotation marks omitted); *see also Meuser v. Colvin*, 838 F.3d 905, 910 (7th Cir. 2016); *Arnett v. Astrue*, 676 F.3d 586, 591 (7th Cir. 2012). "An impairment is 'not severe' only if it is 'a slight abnormality' that has 'no more than a minimal effect on the ability to do basic work activities . . . .'" *Meuser*, 838 F.3d at 910 (quoting SSR 96-3p, 1996 WL 374181 at *1 (July 2, 1996)); *see also O'Connor-Spinner*, 832 F.3d at 697. "When evaluating the severity of an impairment, the ALJ assesses its functionally limiting effects by evaluating the objective medical evidence and the claimant's statements and other evidence regarding the intensity, persistence, and limiting effects of the symptoms." *Thomas v. Colvin*, 826 F.3d 953, 960 (7th Cir. 2016) (citation omitted).

Nevertheless, "any error that an ALJ commits at step two is harmless as long as [he] goes on to consider the combined impact of a claimant's severe and non-severe impairments." *Loftis v. Berryhill*, No. 15 C 10453, 2017 WL 2311214, at *2 n.1 (N.D. Ill. May 26, 2017) (citing *Curvin v. Colvin*, 778 F.3d 645, 648-49 (7th Cir. 2015)); *see also Arnett*, 676 F.3d at 591 ("An ALJ must evaluate all relevant evidence when determining an applicant's RFC, including evidence of impairments that are not severe." (citations omitted)). "A failure to fully consider the impact of non-severe impairments requires reversal." *Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010) (citation omitted)); *compare Rice v. Berryhill*, No. 17 C 1193, 2018 WL 2049931, at *5 (N.D. Ill. May 2, 2018) (finding that the ALJ's step-two determination that the claimant's major

depression was non-severe was not a harmless screening error because the ALJ did not include any mental limitations in the RFC), *with Loftis*, 2017 WL 2311214, at *2 n.1 (finding that the ALJ's step-two determination that the claimant's major depression was non-severe was harmless because the ALJ went on to consider the combined impact of the claimant's severe and non-severe impairments when assigning the RFC).

1. Anxiety and Depression

The ALJ found at step two that Crump had several severe impairments—chronic headaches, degenerative disc disease of the lumbar spine, chronic pain syndrome, thoracic stenosis, lumbar spondylosis, lumbar spinal stenosis without neurogenic claudication, and carpal tunnel syndrome. (AR 18). Crump, however, argues that the ALJ erred by failing to consider her anxiety and depression as severe impairments and their effect in combination with her other impairments. (ECF 21 at 7-12).

The ALJ did discuss Crump's anxiety and depression at step two, but concluded they were non-severe causing no more than mild limitations because she took no medications for these conditions and had not seen a mental health specialist in two years. (AR 20-21; *see also* AR 70-73). Crump first argues that the ALJ erred when finding her anxiety and depression were non-severe because he failed to mention the one mental health assessment of record conducted in July 2017 by Park Center upon referral by Crump's other medical providers, who thought she needed to see a counselor. (ECF 21 at 9, 11; *see* AR 365-76). Indeed, "[t]he ALJ must evaluate the record fairly. Thus, although the ALJ need not discuss every piece of evidence in the record, the ALJ may not ignore an entire line of evidence that is contrary to the ruling." *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003) (citations omitted); *see Stephens v. Heckler*, 766

F.2d 284, 287 (7th Cir. 1985) ("One inference from a silent opinion is that the ALJ did not reject the evidence but simply forgot it or thought it irrelevant.").

The Park Center assessment reflects that Crump's husband had left her three months earlier for a younger woman, and she was "struggling with what to do with her marriage." (AR 366, 369, 372). She reported racing thoughts and expressed resistance to psychotropic medications due to having adverse reactions in the past. (AR 365-66, 369-70). She had difficulty sleeping, and her grief reaction to her son's death from a drug overdose four years earlier was "easily triggered." (AR 370). Her mood and affect were labile from dysphoric to anxious, but she denied any thoughts of suicide. (AR 372). The examiner commented that Crump was "socially disabled" in that her relationships with others were few and conflictual. (AR 366). A mental status exam revealed normal but withdrawn and agitated behavior, normal judgment, helplessness and hopelessness, normal memory, and problems with decision making. (AR 372). She had a moderate level of depression, and a moderate degree of self care impairment, though she was living independently. (AR 372-74). Crump left the appointment early after having a panic attack when talking about her son's death. (AR 372). She was diagnosed with a panic disorder and a stressor-related disorder and was advised to return for a psychiatric evaluation, medication assessment, and therapy. (AR 375). She did not do so. (*Id.*).

Crump argues that the ALJ unfairly used her failure to participate in mental health treatment to infer that her anxiety and depression were non-severe impairments. (ECF 21 at 7-8). In that regard, "[an ALJ] must not draw any inferences about the individual's symptoms and their functional effects from a failure to seek or purse regular medical treatment without first considering any explanations that the individual may provide." *Roddy v. Astrue*, 705 F.3d 631,

9

638-39 (7th Cir. 2013). But here the ALJ *did* thoroughly probe Crump at the hearing about her reasons for failing to participate in any mental health treatment in the prior two years. (AR 70-73). Thus, the ALJ was well aware of Crump's proffered reasons—a dislike of mental health medications and a two-month waiting list for therapy—when reaching his step-two finding.

The ALJ also considered that Crump was examined by a pain psychologist in January 2019 and assessed a PHQ-9 score of 27, which is indicative of "Severe: Major Depression." (AR 799, 804). The ALJ, however, discounted this evidence because the doctor did not recommend any treatment, and because Crump had not participated in mental health treatment or taken psychotropic medications in the past two years. (AR 20). The ALJ also considered that the medical records from various primary care providers did not reflect findings or treatment demonstrative of a severe mental impairment. (AR 20 (citing AR 825, 871)).

In *O'Conner-Spinner v. Colvin*, the Seventh Circuit Court of Appeals reversed an ALJ's step-two finding of non-severe where the claimant had a diagnosis of "major depression, recurrent *severe*." 832 F.3d at 697. There, the Court stated: "That determination is not supported by substantial evidence and, indeed, strikes us as nonsensical given that the diagnosis, by definition, reflects a practitioner's assessment that the patient suffers from 'clinically significant distress or impairment in social, occupational, or other important areas of functioning.'" *Id.* at 697 (quoting American Psychiatric Association, Diagnostic & Statistical Manual of Mental Disorders 679-80 (4th ed. Text Rev. 2000)). The Court further opined that because the ALJ "eliminated depression at Step 2, he did not take into account *any* effects which the disorder might have on O'Connor-Spinner's ability to maintain employment." *Id.* at 698.

Given the 2017 Park Center initial assessment and the 2019 PHQ-9 score of 27, the ALJ's

10

step-two finding that Crump's anxiety and depression were non-severe is vulnerable under the *O'Conner-Spinner* precedent. However, even if the ALJ did err at step two in finding Crump's mental impairments were non-severe, any error in that respect is ultimately harmless on this record. *See Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004) (concluding that an ALJ's error was harmless when it "would not affect the outcome of the case"). To explain, the ALJ ultimately found that Crump could not only perform her past work as a medical coder with the assigned RFC, but also a significant number of other jobs in the national economy, including office helper, mail clerk, counter clerk, and furniture rental clerk. (AR 35-36). Significantly, the ALJ then made an alternative step-five finding, adding the following mental limitations:

> [T]asks involving simple instructions, defined as tasks and instructions that can be learned through short demonstration, or when beyond short demonstration, up to and including one month, consistent with work at the SVP1 and SVP 2 level and the claimant is limited to superficial interaction with coworkers, supervisors and the public, with superficial interaction defined as occasional and casual contact not involving prolonged conversation and contact with supervisors still involves necessary instruction and prolonged conversation is not necessary for task completion and the claimant is limited to work within a low stress job defined as requiring only occasional decision making and only occasional changes in the work setting and the claimant can tolerate predictable changes in the work environment and the claimant can meet production requirements in an environment that allows her to sustain a flexible and goal oriented pace and the claimant is limited from fast paced work with rigid or strict productivity requirements . . . .

(AR 36; *see also* AR 87-88). In doing so, the ALJ stated that even "giving the claimant's testimony the benefit of the doubt and more consideration than warranted by the objective evidence," Crump could still perform a significant number of jobs in the national economy, including laundry sorter, mail clerk, and office helper, even if the foregoing mental limitations were included in the RFC. (AR 36).

While Crump claims she is more limited that as described by the ALJ in the alternative

11

finding, she cites only to her own testimony or self-report; a few mental health comments noted by her primary care providers; and the single initial assessment at Park Center in 2017 (after which Crump never returned) that failed to articulate any specific mental health restrictions.[5] (ECF 21 at 7-12, 22; *see* AR 71-73, 294, 298, 365-74, 498, 510-13, 703, 707, 711). More to the point, Crump fails to cite to any medical source opinion assigning her greater mental limitations that those described by the ALJ in his alternative finding at step-five. *See Rice v. Barnhart*, 384 F.3d 363, 370-71 (7th Cir. 2004) ("More importantly, there is no doctor's opinion contained in the record which indicated greater limitations than those found by the ALJ."). "[T]he primary responsibility for producing medical evidence demonstrating the severity of impairments remains with the claimant." *Flener ex rel. Flener v. Barnhart*, 361 F.3d 442, 448 (7th Cir. 2004) (citation omitted). Here, Crump has failed to carry her burden of producing evidence showing that her mental impairments are more severe than those assigned by the ALJ in his alternative step-five finding.

"If it is predictable with great confidence that the agency will reinstate its decision on remand because the decision is overwhelmingly supported by the record though the agency's original opinion failed to marshal that support, then remanding is a waste of time" and, therefore, not appropriate. *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010); *see also Walters v. Astrue*, 444 F. App'x 913, 919 (7th Cir. 2011) (noting that the Court "must reverse unless satisfied that no reasonable trier of fact could have come to a different conclusion, in which event a remand

---

[5] While Crump seizes upon that Park Center referred to her as "socially disabled" in its initial assessment due to her nonexistent or conflictual relationships with others (ECF 21 at 11, 22 (citing AR 366)), the determination of disability is reserved to the Commissioner, *see Clifford*, 227 F.3d at 870; *Diaz v. Chater*, 55 F.3d 300, 306 n.2 (7th Cir. 1995). Notably, this examiner did not offer a medical source opinion containing specific mental health restrictions.

would be pointless"). Given the ALJ's alternative finding at step five, any error by the ALJ in finding Crump's anxiety and depression non-severe at step two is harmless and does not warrant a remand of this case.

    2. <u>Left Shoulder Capsulitis, Impingement Syndrome, and Dupuytren's Contracture</u>

Crump also argues that the ALJ erred at step two by concluding her diagnoses of left shoulder capsulitis, impingement syndrome, and dupuytren's contracture were non-severe impairments causing no more than minimal long-term restrictions. (ECF 21 at 12-13 (citing AR 18)). The ALJ discussed these conditions at step two but concluded that the record had "scant" information on limitations of function in the left upper extremity and "very little" objective findings, aside from difficulty with working overhead. (AR 19 ("Overall, there is a dearth of information to support her current [shoulder] claim/allegations.")). Later, in the RFC, the ALJ limited Crump to lifting, carrying, pushing, or pulling no more than ten pounds frequently and twenty pounds occasionally; frequent fingering, feeling, gripping, and fine manipulation of small objects; frequent gross manipulation and handling, grasping turning, and gripping of large objects; occasional overhead reaching and occasional overhead work; and avoid work requiring reaching behind the back. (AR 22-23).

Crump argues that, contrary to the ALJ's characterization, the record reflects ongoing left upper extremity complaints and clinical findings. (ECF 21 at 13 (citing AR 382, 385, 475, 576, 587, 703, 706, 711)). But the medical records to which Crump cites do not advance her argument. To the contrary, they reinforce the ALJ's summary that there is "scant" information in the record on limitation of function in the left upper extremity and "very little" objective findings. (AR 19). Nor does Crump point to any medical source opinion who assigned her

13

upper extremity limitations more restrictive than the ALJ in the RFC. *See Rice*, 384 F.3d at 370-71.

As the Seventh Circuit has emphasized, "[i]t is axiomatic that the claimant bears the burden of supplying adequate records and evidence to prove [her] claim of disability." *Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004) (citing 20 C.F.R. § 404.1512(c); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987)). Crump fails to carry that burden with respect to the severity of her left shoulder capsulitis, impingement syndrome, and dupuytren's contracture. Thus, the ALJ's step-two finding concerning these impairments is supported by substantial evidence.

### D. The ALJ's Step-Three Determination

In her second argument, Crump contends that the ALJ erred at step three with respect to Listing 1.04A, disorders of the spine, by rendering a "perfunctory conclusion without citation to evidence and no logical bridge connecting the conclusion to the evidence . . . ." (ECF 21 at 14). This argument, too, is unpersuasive.

"Under a theory of presumptive disability, a claimant is eligible for benefits if she has an impairment that meets or equals an impairment found in the Listing of Impairments." *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citing 20 C.F.R. § 404.1520(d); 20 C.F.R Part 404, Subpart P, App'x 1)). "The listings specify the criteria for impairments that are considered presumptively disabling." *Id*. (citing 20 C.F.R. § 404.1525(a)). To meet or equal a listed impairment, a claimant must satisfy *all* of the criteria of the listed impairment. *See Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006); *Maggard v. Apfel*, 167 F.3d 376, 380 (7th Cir. 1999). The claimant bears the burden of proving her condition meets or equals a listed impairment. *Ribaudo*, 458 F.3d at 583; *Maggard*, 167 F.3d at 380. Having said that, "an ALJ

14

should mention the specific listings he is considering and his failure to do so, if combined with a 'perfunctory analysis,' may require a remand." *Ribaudo*, 458 F.3d at 583-84 (citing *Barnett*, 381 F.3d at 668; *Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 786 (7th Cir. 2003)); *see also Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002).

The criteria of listing 1.04A is as follows:

> 1.04  Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord.  With:
>
> A.  Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)[.]

20 C.F.R. Part 404, Subpart P, App'x 1, § 1.04.[6]

When considering Listing 1.04A at step three, the ALJ stated:

> Specifically, the undersigned has considered the claimant's degenerative disc disease under listing 1.04, but concluded that the claimant's condition does not satisfy the severity requirements of this listed impairment, as she does not have evidence of nerve root compression or the requisite neurological deficits.

(AR 22).  Crump contends that the ALJ's analysis is perfunctory and, "is, in itself, sufficient grounds to remand the case."  (ECF 21 at 14).

But "[t]here is no requirement of . . . tidy packaging; . . . we read the ALJ's decision as a whole and with common sense." *Buckhanon ex rel. J.H. v. Astrue*, 368 F. App'x 674, 678-79 (7th Cir. 2010) (citations omitted).  Accordingly, "when an ALJ explains how the evidence

---

[6] Listing 1.04A has since been recodified under Listing 1.15.  *See, e.g.*, *McPherson v. Kijakazi*, No. 1:20CV710, 2021 WL 5889988, at *n.6 (M.D.N.C. Dec. 13, 2021) (R. & R.) (citing Rescission of Acquiescence Ruling 15-1(4), 85 FR 79063, 2020 WL 7209986 (Dec. 8, 2020)).

reveals a claimant's functional capacity, that discussion may doubly explain how the evidence shows the claimant's impairment is not presumptively disabling under the pertinent listing. And . . . [t]o require the ALJ to repeat such a discussion throughout [the] decision would be redundant." *Jeske v. Saul*, 955 F.3d 583, 590 (7th Cir. 2020) (second and third alterations in original) (citation and internal quotations marks omitted)); *see also Zellweger v. Saul*, 984 F.3d 1251, 1255 (7th Cir. 2021).

When discussing the medical evidence in the context of determining an RFC, the ALJ made it quite clear that Crump did not meet or equal the requirements of Listing 1.04A. The ALJ observed that MRI results from late 2018 showed compression of the thecal sac near the L1 nerve root but not spinal cord or nerve root impingement. (AR 32). The ALJ noted that Crump's treating physician reviewed the imaging results in early 2019 and assessed degenerative disc disease at T12-L1 with a small disc bulge, but that the results were otherwise "pretty benign with some minor other degenerative findings in the L1-2 L2-3 discs." (*Id.*). The ALJ further observed that at a medical visit in April 2018, the doctor indicated that Crump's EMG in December 2017 was "negative for any radiculopathy."[7] (AR 31 (citing AR 489)); *see Jeske*, 955 F.3d at 591 (affirming the ALJ's step-three determination that the claimant did not meet or equal Listing 1.04A where "[t]o start, no medical records or other reports mentioned nerve root compression, nor did any of them indicate that all the indicia of nerve root compression were present").

---

[7] Radiculopathy is relevant to Listing 1.04A's requirement of evidence of nerve root compression. *See Wyatt v. Colvin*, No. 13CV1972-WQH-NLS, 2014 WL 3501974, at *3 n.4 (S.D. Cal. July 14, 2014) ("Lumbar radiculopathy is the compression or inflammation of the spinal nerve root that may cause pain, numbness, or weakness." (citation omitted)); *Pereira v. Astrue*, 279 F.R.D. 201, 203 n.4 (E.D.N.Y. 2010) ("Lumbar Radiculopathy is a compression and irritation of nerve roots in the lumbar region, with resultant pain in the lower back and lower limbs." (citation omitted)).

Crump for the most part ignores that these objective tests did not reveal nerve root compression and instead hones in on diagnoses of "radiculopathy" and "stenosis" sprinkled throughout the record. (ECF 21 at 15 (citing AR 803-07, 817-18, 823-24, 837-39, 842)). She also cites to some clinical examination findings of "positive straight leg raise (SLR) testing showing radicular symptoms, facet loading, sensation deficits, and reduced range of motion." (*Id.* (citing AR 492-95, 498-99, 530-31, 576-77, 587-90, 711)). Crumps contends the ALJ erred by failing to explain why these findings failed to satisfy the listing requirements. (*Id.* at 15-16).

Not so. "The regulations make clear that a disorder under Listing 1.04 is evident only if *all* the listing's criteria are met." *Jeske*, 955 F.3d at 590 (emphasis added). While Crump at times exhibited some symptoms common to nerve root compression, the ALJ recognized that Crump's symptoms significantly improved after undergoing physical therapy and spinal injections. (AR 26-28, 30-33; *see, e.g.*, AR 512, 554, 609, 667-68, 692, 703). The records shows inconsistent straight-leg raising tests—some positive but many negative. (*Compare* AR 533, *with* AR 540, 542, 551, 559, 566); *see Jeske*, 955 F.3d at 591. And "none of the records indicated whether the positive ones were positive in both sitting and supine positions, as Listing 1.04A requires." *Jeske*, 955 F.3d at 591. Also, while Crump had reduced range of motion and strength in some examinations (AR 530, 537, 540), her range of motion and strength scores improved after participating in physical therapy and injections (AR 512, 609, 667-68, 692, 703). The evidence was also mixed as to whether Crump experienced loss of sensation. (AR 540, 542, 551, 711).

Thus, this is not a case in which both the ALJ's step-three discussion and the RFC analysis were inadequate; rather, the ALJ analyzed the medical evidence in detail when assigning the

RFC. *Compare Zellweger*, 984 F.3d at 1255 ("[T]he RFC analysis is extensive and supports the ALJ's determination that Zellweger is not per se disabled under Listing 1.04."), *with Minnick v. Colvin*, 775 F.3d 929 (7th Cir. 2015) (finding the step-three determination and the RFC analysis were both deficient). "[A]lthough the evidence showed [Crump] suffered from limiting back pain, abundant evidence supports the ALJ's determination that her condition lacked all the requirements of a presumptively disabling impairment under Listing 1.04A." *Jeske*, 955 F.3d at 592. Therefore, in this particular instance the ALJ's step-three determination, though brief, does not warrant a remand of the Commissioner's final decision.[8]

### E. The ALJ's Step-Four and Step-Five Findings

Crump also challenges the ALJ's step-four finding that she could perform her past relevant work as a medical coder despite the limitations caused by her impairments. Crump argues that the ALJ reached this conclusion without engaging in the analysis required by the regulations, by erroneously relying on findings from a prior ALJ decision, and without complying with Social Security Ruling 82-62. (ECF 21 at 18-19). As explained *supra* in footnote 3, the job of medical coder was not included in Crump's list of past relevant work in this record, but at the hearing the ALJ attempted to adopt this finding from a 2017 ALJ decision and "make [it] part of the this record by talking about it." (AR 48). Among other things, Crump observes that the time period

---

[8] As a final point, an ALJ may rely on the opinions of the state agency doctors as to whether a claimant meets or equals a listing at step three and provide little explanation, so long as there is no contradictory evidence in the record. *Ribaudo*, 458 F.3d at 584; *see Scheck*, 357 F.3d at 700 (stating that Disability Determination and Transmittal forms completed by the state agency physicians conclusively established that the claimant did not medically equal Listing 1.05). Here, the state agency physicians reviewed Crump's record in December 2017 and September 2018, respectively, and concluded that she was not disabled, specifically mentioning Listing 1.04. (*See* AR 115, 117, 119, 125, 127, 129-31, 139, 152, 154, 158-59).

for past relevant work—work performed within fifteen years of the date of the decision, 20 C.F.R. § 404.1565(a), 416.965(a)—do not align between the two decisions. (ECF 21 at 20).

The Commissioner, in a nutshell, concedes that the ALJ erred in analyzing Crump's past work as a medical coder at step four. (ECF 24 at 12-14). But the Commissioner contends that the error was harmless because the ALJ continued to step five and found that Crump could perform a significant number of other jobs in the national economy as well. (*Id.*); *see Skarbek*, 390 F.3d at 504.

Indeed, after determining that Crump could perform her past relevant work as a medical coder, the ALJ continued on to step five. Relying on the vocational expert's testimony, the ALJ found that a hypothetical individual with Crump's age, education, work experience, and RFC could also perform a significant number of other jobs in the national economy, including office helper, mail clerk, counter clerk, and furniture rental clerk. (AR 35-36, 86-87). Crump does not meaningfully challenge this step-five finding, other than to merely repackage her earlier step-two argument that the ALJ failed to adequately evaluate and account for her mental limitations in the RFC.[9] (*See* ECF 21 at 21-23). For the reasons already discussed *supra* in the context of Crump's step-two argument, that argument fails to warrant a remand. Therefore, the ALJ's step-five finding is supported by substantial evidence, rendering any error at step four harmless. The Commissioner's final decision will be affirmed. *See McKinzey v. Astrue*, 641 F.3d 884, 892 (7th

---

[9] Crump at the end of her opening brief tacks on an argument that if she were limited to sedentary work she would be deemed disabled under grid rule 201.06 based on her age, work experience, and education. (ECF 21 at 23-24). But Crump makes no substantive argument in her brief that she should be limited to sedentary work. Therefore, this final assertion about grid rule 201.06 is irrelevant. *See Webster v. Astrue*, 580 F. Supp. 2d 785, 794 (W.D. Wis. 2008) (explaining in a social security appeal that undeveloped arguments are deemed waived (citing *Kochert v. Adagen Med. Int'l, Inc.*, 491 F.3d 674, 679 (7th Cir. 2007))).

Cir. 2011) (stating if a review of the records convinces the Court that "no reasonable ALJ would reach a contrary decision on remand," then a remand would not be appropriate).

## IV.  CONCLUSION

For the foregoing reasons, the Commissioner's decision is AFFIRMED.  The Clerk is DIRECTED to enter a judgment in favor of the Commissioner and against Crump.

SO ORDERED.

Entered this 21st day of December 2021.

/s/ Susan Collins
Susan Collins
United States Magistrate Judge
